UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CHARLES SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil. No. 6:20-cv-00180-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DR. KILOLO KIJAKAZI, ACTING | ) | **&** |
| COMMISSIONER OF SOCIAL | ) | **ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | | |

*** *** *** ***

Plaintiff Charles Smith, Jr., seeks judicial review pursuant to 42 U.S.C. § 405(g), of the

Commissioner of Social Security's ("Commissioner") administrative decision denying his

application for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI"). For the reasons stated below, the Court will **DENY** Smith's Motion for Summary

Judgment [R. 11] and **GRANT** that of the Commissioner [R. 13].

**I**

Smith filed his application for benefits on June 16, 2016, alleging disability beginning on

January 1, 2011. [Tr. 14.] His application was denied initially and upon reconsideration. [*Id*.]

A video-hearing was conducted before Administrative Law Judge ("ALJ") Davida Isaacs on

October 23, 2018, where Christopher Rymond, a vocational expert, testified. [*Id*.] At that

hearing, Smith indicated his desire to submit additional evidence. [*Id.*] Though that request was

untimely, the ALJ granted a fifteen-day extension to file this evidence, but it was never filed.

[*Id.*] Also at that hearing, Smith amended his date of disability onset to June 16, 2016. A second hearing was held on June 24, 2019 after more evidence was received. [Tr. 14; 162-211.]

Smith is a middle-aged man who is married with a number of children. [Tr. 533.] He alleges disability due to a slew of physical and mental impairments. [*See* Tr. 17-20.] Physically, he suffers degenerative disc disease, cervical spine herniation, diabetes mellitus, obesity, and irritable bowel syndrome. [Tr. 17.] One of his most significant physical impairments is amputation of the ring and pinky fingers, and the tip of the middle finger, of his right hand. [*Id.*] Mentally, he suffers from anxiety and depression. [*Id.*] Despite these ailments, Smith can help with laundry, mow, drive, and pay bills. [Tr. 459-60.] Smith has past relevant work experience in coal mines and sawmills. [Tr. 23.]

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. §

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

404.1520(d).  Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.  Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled."  20 C.F.R. § 404.1520(e).  The plaintiff has the ultimate burden of proving compliance with the first four steps.  *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, he is "disabled."  20 C.F.R. § 404.1520(f).

In this case, the ALJ issued her written decision on July 25, 2019.  [Tr. 14-25.]  At Step 1, the ALJ found that Smith has not engaged in substantial gainful activity since the amended onset date.  [Tr. 17.]  At Step 2, the ALJ found that Smith had the following severe impairments: "degenerative disc disease (DDD) of the lumbar spine, herniation of the cervical spine, diabetes mellitus, obesity, amputation of the fourth and fifth digits, and top of the third digit, of the right hand, depression/anxiety, [and] irritable bowel syndrome (IBS)."  [*Id.*]  At Step 3, the ALJ concluded that Smith did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, and 416.926)," so her analysis continued to the next step.  [*Id.*]  At Step 4, the ALJ concluded that Smith has an RFC to "perform light work as defined in 20 CFR 404.1567(b)."  [Tr. 16.]  The ALJ noted the following specific limitations:

[Smith] can stand and/or walk for only 4 hours per day; can perform no climbing of ladders, ropes, or scaffolds; cannot crouch or crawl; no more than frequently flex or rotate his neck; hold no more than 5 pounds with the dominant hand; frequently handle with the dominant hand; frequently finger with the dominant hand, however, can perform only tasks with that hand requiring no more than the thumb, forefinger, and middle finger and involving items no less than 6 inches; occasionally push/pull with the dominant arm. He should be exposed to no vibration; nor be exposed to unusually hazardous workplaces (such as those with large dangerous machinery or unprotected heights). He can perform only tasks requiring no more than minimal changes in job requirements, may be off-task up to 10% of the day; and may be expected to have up to 1 unscheduled absence per month.

[Tr. 20.]  With these limitations in mind, the ALJ determined that Smith was not capable of performing his past, relevant work.  [Tr. 23-24.]  Finally, at Step 5, the ALJ adopted the opinion of the vocational expert that there were a significant number of jobs in the national economy that Smith could perform.  [Tr. 24-25.]  As a result, she concluded that he was not disabled.  [Tr. 25.]  The Appeals Council found no reason for review.  [Tr. 5-7]  Smith now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Smith now argues that the Commissioner's decision "is not supported by substantial evidence."  [R. 11-1 at 1.]  He presents the following specific arguments:

1. "The ALJ did not adequately evaluate the opinion of the consultative psychologist, Dr. Ford."

2. "The decision does not give a sufficient justification for rejecting Plaintiff's testimony about his pain."

3. "The ALJ's residual functional capacity ("RFC") assessment does not correctly describe Plaintiff's amputations."

[R. 11-1 at 1-2.]

## A

Smith first complains that the ALJ did not give sufficient weight to the opinion of Dr. Ford.  [R. 11-1 at 8-11.]  Dr. Ford performed a psychological evaluation on Smith in August 2016.  [Tr. 553-536.]  The ALJ summarized Dr. Ford's opinions as follows:

5

[T]he claimant would be able to understand, remember, and carry out instructions toward the performance of simple tasks; that he was moderately limited in how he tolerated stress and pressure; that his ability to concentrate toward simple task completion was not limited; and that his ability to respond appropriately in social situations was slightly to moderately affected.

[Tr. 23.]  Smith argues the ALJ improperly gave this opinion partial weight by concluding Dr. Ford "simply relied on Plaintiff's subjective complaints."  [R. 11-1 at 11.]  However, the ALJ "nevertheless" included provisions in the RFC compensating for these deficits.  [Tr. 22-23.] Even though the ALJ believed this opinion was to be weighted lower than other evidence, she still incorporated Dr. Ford's findings into the RFC.  The Court will note Smith does not explain how this decision influences whether the ALJ's conclusion was supported by substantial evidence.

Smith also misconstrues Dr. Ford's findings.  He states those findings "support a conclusion that Plaintiff is unable to carry out the basic mental demands of unskilled work."  [R. 11-1 at 11.]  Dr. Ford concluded Smith is moderately limited in his ability to tolerate the stress of day-to-day employment and slightly to moderately limited in his ability to respond appropriately to supervision and workplace pressures.  [Tr. At 534-35.]  She also found that Smith's "ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected by the impairment."  *Id.* at 535.  Smith cites to a Social Security policy statement to support his argument that "Dr. Ford's report compels a finding that Plaintiff is disabled."  [R. 11-1 at 10-11.]  That report states:

The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability

> because even favorable age, education, or work experience will not offset such a
> severely limited occupational base.

SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).  Smith's reliance on this statement is inapposite

because Dr. Ford found Smith was not limited in some of these abilities and was at most

"moderately" limited.  [Tr. 535.]  A moderate impairment is not so limiting to constitute a

"substantial loss of ability."   SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *see also Bullock v.*

*Astrue*, 09-75-GWU, 2010 WL 567328 at *4 (E.D. Ky. Feb. 12, 2010).  Therefore, Dr. Ford's

own conclusions provide substantial evidence for the ALJ's finding that Smith is not disabled.

### B

Smith next argues that the ALJ improperly rejected his testimony about different aspects

of his pain.  [R. 11-1 at 11-14.]  The ALJ stated some of Smith's testimony was "not entirely

consistent" with the evidence.  [Tr. 21.]  Smith argues his back pain, manipulative limitations,

and limited daily activities were consistent with the evidence and should not have been

discounted.  [R. 11-1 at 11-14.]  First, Smith testified he suffers from lower back pain that limits

his ability to walk and stand for extended periods of time.  [Tr. 129-32.]  The ALJ made note of

the MRIs and X-rays of Smith's back and accounted for the impairments they showed in the

RFC.  [Tr. 21.]  Smith does not explain how the ALJ's holding failed to take his testimony into

account.  The RFC takes Smith's back pain into account by limiting his time standing or walking

to four hours per day.  This is consistent with Smith's testimony about the extent of his back

pain, which he said requires him to rest after standing or walking for ten to fifteen minutes

because he could spend up to half of his workday sitting.  [*See* Tr. 168-71.]  Though the ALJ

introduced her analysis of Smith's RFC by saying his statements about the severity of his

symptoms were "not entirely consistent" with the evidence, it does not seem this statement

applied to his back pain.  The MRIs and X-rays showing some back impairments are consistent with his testimony about his back pain and this pain was accounted for in the RFC.  Smith's testimony, the MRIs, and the X-rays all provide substantial evidence for the ALJ's conclusion that Smith should be limited in his sitting and standing hours per day.

Second, Smith claims his testimony about manipulative limitations caused by the amputated fingers on his right hand is supported by the record.  [R. 11-1 at 13.]  The RFC states Smith can:

> "hold no more than 5 pounds with the dominant hand; frequently handle with the dominant hand; frequently finger with the dominant hand, however, can perform only tasks with that hand requiring no more than the thumb, forefinger, and middle finger and involving items no less than 6 inches; occasionally push/pull with the dominant arm. He should be exposed to no vibration."

[Tr. 20.]  Smith's testimony about his manipulative limitations expressed that he did most of his work with his left hand but could use his right hand in limited ways.  [Tr. 127-28, 170-75.]  He also noted problems with holding a weed eater because of the vibrations.  [Tr. 136.]  On the other hand, he stated he could handle items "two inches by six inches."  [Tr. 184.]  However, Dr. Chaney evaluated Smith and concluded "the patient can only handle objects really with the left hand and not the right."  [Tr. 528.]  While this evaluation may provide evidence to the contrary, the record still includes substantial evidence that Smith can use his right hand, with limitations, precluding this Court from reversing the ALJ.  *Ulman*, 693 F.3d at 714.  Smith himself testified he could use his right hand in some ways [Tr. 127-28, 170-75] and the ALJ incorporated the limitations he expressed into the RFC.  There was substantial evidence for her finding, so this Court cannot grant Smith relief on this ground.

Smith finally contends the ALJ did not justify her claim that his testimony about his limited daily activities was inconsistent with the record.  The ALJ pointed out two statements she believed were inconsistent with the record: that Smith tries not to do anything at home and does not take care of his children.  [Tr. 21.]  She contrasted this with Smith's statements that he can perform light chores, does the paperwork, does laundry, and mows the lawn.  [*Id.*]  She also found it was "not reasonable nor otherwise indicated in the record" that his children could care for themselves.  [*Id.*]  Smith claims his difficulties with simple activities, like not being able to sweep and needing his wife to assist with grocery shopping, prove he cannot work a standard schedule.  [R. 11-1 at 14.]

This Court's role is not to resolve any alleged conflict in the evidence, but to determine if substantial evidence supports the ALJ's decision.  *Ulman*, 693 F.3d at 713.  There was substantial evidence to support the ALJ's finding that Smith can work a regular schedule. Smith's own testimony established that he can perform many daily activities like laundry, mowing, paying bills, et cetera.  [Tr. 460.]  In *Warner*, the Sixth Circuit found a claimant's testimony that they could "pick a coin off a table, vacuum, drive short distances, and wash spoons and forks" provided substantial evidence against the claimant's assertion of "disabling pain."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).  Though there may have been some evidence to the contrary, Smith's statements about his ability to perform household tasks provided substantial evidence for the ALJ's conclusion that he is able to perform work-related activities.

## C

Finally, Smith claims the ALJ described his amputations incorrectly.  The RFC limits his ability to use his right hand to tasks requiring only the thumb, forefinger, and middle finger.  [Tr.

20.]  However, the record indicates the tip of his middle finger was also amputated.  [Tr. 538.]
While the RFC does not include this additional amputation, Smith's assertion that the vocational
expert did not address this injury is incorrect.  [*See* R. 11-1 at 15.]  In the first hearing, the ALJ
asked the vocational expert whether there were sufficient jobs for a person who, among other
limitations "could only perform tasks with [the dominant] hand requiring no more than the
thumb and forefinger."  [Tr. 152.]  The expert confirmed there were jobs in the national economy
available for someone with these limitations, which precludes a finding of disability.  [Tr. 25,
153.]; 20 C.F.R. § 404.1520(f).  This finding, which was adopted by the ALJ, takes the
additional amputation into account but still provides substantial evidence that Smith is not
disabled.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding
Smith is not disabled is supported by substantial evidence.  Even if the evidence could also
support another conclusion, the ALJ's decision must stand because the evidence reasonably
supports her conclusion.  *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*,
987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as
follows:

(1)  Smith's Motion for Summary Judgment [R. 11] is **DENIED**;

(2)  The Commissioner's Motion for Summary Judgment [R. 13] is **GRANTED**, and;

(3)  **JUDGMENT** in favor of the Commissioner will be entered contemporaneously
herewith.

This the 24th day of November, 2021.

Gregory F. Van Tatenhove
United States District Judge

11